**FILED**

NOV 2 6 2013

Clerk, U.S. District **and**
Bankruptcy Courts

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD-PARTY SUBPOENA FOR DEPOSITION | Case: 1:13-mc-01331<br>Assigned To : Boasberg, James E.<br>Assign. Date : 11/26/2013<br>Description: Miscellaneous |
| GREGORY THORPE and BLAIR HAMRICK,<br><br>Plaintiffs,<br><br>v.<br><br>KEITH F. CROSS, JOSEPH F. BENNETT, and CROSS & BENNETT L.L.C.,<br><br>Defendants. | Related cases:<br><br>No. 1:13-mc-00405-JEB-DAR<br>Before the Honorable Deborah A. Robinson in the DISTRICT COURT FOR THE DISTRICT OF COLUMBIA<br><br>No. 1:12-cv-11632-RWZ<br>Pending in the DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS |

## NON-PARTIES PHILLIPS & COHEN LLP AND ERIKA KELTON'S MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER RE: SUBPOENA FOR DEPOSITION OF ERIKA KELTON

 {00054803; 1}

## MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT non-parties Phillips & Cohen LLP ("P&C") and Erika Kelton hereby move for an order quashing the subpoena served upon Ms. Kelton by plaintiffs Gregory Thorpe and Blair Hamrick (a copy of which is appended as Exhibit , or in the alternative, for a protective order precluding the discovery sought, on the grounds that: (1) Thorpe and Hamrick seek the protected work product of an attorney; and (2) the subpoena seeks to impose an undue burden on Ms. Kelton and P&C. This motion is made pursuant to Federal Rules of Civil Procedure 26 and 45, and is based upon the accompanying Memorandum of Points and Authorities; the declaration of Stephen Hasegawa filed concurrently herewith; the files and pleadings in this action; and all other matters of which this Court may take judicial notice.

Dated:  November 25, 2013

*K. W. Ch*

Peter W. Chatfield, Esq.
D.C. Bar No. 418576
PHILLIPS & COHEN LLP
2000 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel:  (202) 833-4567
Fax:  (202) 833-1815
Email:  peter@phillipsandcohen.com

Stephen Hasegawa, Esq.
(Application for admission *pro hac vice* pending)
PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300
San Francisco, CA 94105
Tel:  (415) 836-9000
Fax:  (415) 836-9001
Email:  ssh@pcsf.com

Attorneys for non-party subpoena recipient
ERIKA KELTON and non-party PHILLIPS & COHEN
LLP

{00054803; 1}

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD-PARTY SUBPOENA FOR DEPOSITION | Case No. _____ |
| | |
| GREGORY THORPE and BLAIR HAMRICK, | Related cases: |
| Plaintiffs, | No. 1:13-mc-00405-JEB-DAR<br>Before the Honorable Deborah A. Robinson in the |
| v. | DISTRICT COURT FOR THE DISTRICT<br>OF COLUMBIA |
| KEITH F. CROSS, JOSEPH F. BENNETT, and CROSS & BENNETT L.L.C., | No. 1:12-cv-11632-RWZ<br>Pending in the DISTRICT COURT FOR THE<br>DISTRICT OF MASSACHUSETTS |
| Defendants. | |

**NON-PARTIES PHILLIPS & COHEN LLP AND ERIKA KELTON'S MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER RE: SUBPOENA FOR DEPOSITION OF ERIKA KELTON; MEMORANDUM OF POINTS AND AUTHORITIES**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    SUMMARY OF FACTS AND PROCEDURAL HISTORY .........................................2

III.   ARGUMENT ....................................................................................................6

       A.   The Court should Quash the Subpoena Because the Information
            Sought is Protected Work Product ........................................................6

            1.   The Information Thorpe and Hamrick Seek is Kelton and P&C's
                 Protected Work Product ...............................................................6

            2.   Third-Party Work Product Is Protected by the *Hickman* Rule .................10

            3.   The Court Should Quash the Subpoena for Kelton's Deposition ..............13

       B.   In the Alternative, the Court Should Issue a Protective Order
            Precluding Disclosure of Kelton's Opinions, Analyses, or Personal
            Recollections ................................................................................13

       C.   The Court Should Apply the *Shelton* Rule to Preclude the Deposition
            of Counsel ....................................................................................15

       D.   In the Alternative, the Court Should Quash the Subpoena Because the
            Burden of the Deposition Would Strongly Outweigh the Relevance of
            Any Non-Work Product Evidence Sought ...............................................18

            1.   A Court Must Limit Discovery if Its Burden Outweighs Its Benefit .........18

            2.   The Deposition Would Be Unduly Burdensome to Ms. Kelton ..............19

            3.   The Burden of the Deposition Outweighs the Limited Relevance of
                 Any Non-Privileged Work Product Available to Thorpe and
                 Hamrick.................................................................................20

IV.    REQUEST FOR ORAL ARGUMENT ...................................................................21

V.     CONCLUSION ...............................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*800 Front Street Corp. v. Travelers Prop. Cas. Co.*,
2006 U.S. Dist. LEXIS 84160 (E.D.N.Y. Nov. 20, 2006) ........................................... 13

*Abdell v. City of New York*,
2006 U.S. Dist. LEXIS 66114 (S.D.N.Y. Sep. 14, 2006) ........................................... 12

*Allied Irish Banks, p.l.c. v. Bank of America*,
252 F.R.D. 163 (S.D.N.Y. 2008) ................................................... 13, 14, 15

*ASARCO, LLC v. Americas Mining Corp.*,
2007 U.S. Dist. LEXIS 84604 (D. Ida. Nov. 15, 2007) ......................................... 14, 15

*Basinger v. Glacier Carriers, Inc.*,
107 F.R.D. 771 (M.D. Pa. 1985) ............................................................. 13, 16

*Burlodge Ltd. v. Standex Internat'l. Corp.*, 257 F.R.D. 12 (D.D.C. 2009) ...................... 21

*Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694 (N.D. Ga. 2007) ................. 11, 13, 14, 16

*Coleman v. District of Columbia*, 284 F.R.D. 16 (D.D.C. 2012) ............................... 17, 19

*Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, 1999 U.S. Dist. LEXIS 1072,
1999 WL 1815561 (D.D.C. Feb. 2, 1999) ..................................................... 18

*Crosby v. City of New York*,
269 F.R.D. 267 (S.D.N.Y. 2010) .......................................................... 11, 12

*Cusumano v. Microsoft Corp.*, 162 F.3d 708 (1st Cir. 1998) ........................................ 21

*Delaney, Midgail & Young, Chartered v. IRS*, 826 F.2d 124 (D.C. Cir. 1987)............... 13

*Director of Office of Thrift Supervision v. Vinson & Elkins, L.L.P.*, 168 F.R.D. 445
(D.D.C. 1996) ..................................................................................... 9, 10

*FTC v. Grolier, Inc.*, 462 U.S. 19 (1983)......................................................... 13

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
263 F.R.D. 1 (D.D.C. 2009)..................................................................... 17

*Haus v. City of New York*,
2006 U.S. Dist. LEXIS 85225 (S.D.N.Y. Nov. 17, 2006) ........................................... 12

*Hickman v. Taylor*,
329 U.S. 495 (1947)........................................................................... passim

*Ideal Elect. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143 (D.C. Cir. 1997).......................20

*In re Burlington Northern, Inc.*, 822 F.2d 518 (5th Cir. 1987)...........................................8

*In re Cendant Corp. Sec. Litig.*, 343 F.3d 658  (3d Cir. 2003)...........................................8

*In re Grand Jury Proceedings*, 473 F.2d 840 (8th Cir. 1973) .............................................8

*In re Grand Jury Subpoena (Zerendow)*, 925 F. Supp. 849 (D. Mass. 1995). .................10

*In re Murphy*, 560 F.2d 326 (8th Cir. 1977) ....................................................................14

*In re Sealed Case*, 856 F.2d 268 (D.D.C. 1988)................................................................10

*In re Student Finance Corp.*,
   2006 U.S. Dist. LEXIS 86603 (E.D. Pa. Nov. 29, 2006) ...........................12, 14, 15, 16

*In re Subpoena Issued to Dennis Friedman*,
   350 F.3d 65 (2d Cir. 2003) ....................................................................................17, 18

*Jean v. City of New York*,
   2010 U.S. Dist. LEXIS 2282 (E.D.N.Y. Jan. 12, 2010) ..............................................13

*M & R Amusements Corp. v. Blair*, 142 F.R.D. 304 (N.D. Ill. 1992)................................17

*Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418 (N.D. Ill. 1987)...................18

*SEC v. Schroeder*,
   2009 U.S. Dist. LEXIS 39378 (N.D. Cal. Apr. 27, 2009) ...........................................15

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
   276 F.R.D. 376 (D.D.C. 2011)..............................................................................22, 23

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) .......................................................................................6

*United States v. Deloitte LLP*,
   610 F.3d 129 (D.C. Cir. 2010)...........................................................................6, 7, 11

*Upjohn Co. v. United States*, 449 U.S. 383 (1981).........................................................8, 9

*Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007)..................................................................21

*Wyoming v. U.S. Dep't. of Agriculture*, 208 F.R.D. 449 (D.D.C. 2002) ..........................21

*Zagklara v. Sprague Energy Corp.*,
   2011 U.S. Dist. LEXIS 56782 (D. Me. May 26, 2011) ................................................13

MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

**Federal Statutes**

31 U.S.C. § 3729 ............................................................................................................... 1

31 U.S.C. § 3730(b)(5) ..................................................................................................... 3

**Federal Rules**

Fed. R. Civ. Proc. 26(b) ..........................................................................................9, 11, 21

Fed. R. Civ. Proc. 26(c) ................................................................................................... 21

Fed. R. Civ. Proc. 45(c) ................................................................................................... 21

**Treatises**

8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed.
    1994) ............................................................................................................................ 8

MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

## MEMORANDUM OF POINTS AND AUTHORITIES

Non-parties Phillips & Cohen LLP ("P&C") and Erika Kelton (an attorney at P&C), who have never represented plaintiffs Gregory Thorpe or Blair Hamrick, but that represented different clients in the lawsuit from which this malpractice action arises— move to quash the subpoena (the "Subpoena") served by Thorpe and Hamrick seeking Ms. Kelton's testimony, or, in the alternative, for a protective order limiting the deposition to factual information preventing unwarranted intrusion into Ms. Kelton's thoughts, impressions, and intentions that are protected as attorney work product.

## I.    INTRODUCTION

This malpractice lawsuit has its origins in a series of whistleblower lawsuits (the "GSK lawsuits") filed against GlaxoSmithKline LLC ("GSK") under the False Claims Act (the "FCA") and similar state laws.  The FCA and analogous state statutes permit persons with knowledge of fraud (sometimes called "relators") to sue on behalf of government victims of that fraud; if the government obtains a judgment or settlement as a result of those "*qui tam*" suits, the *qui tam* plaintiffs may share in the government's recovery. *See, e.g.*, 31 U.S.C. § 3729 *et seq.* The whistleblowers' reward in a *qui tam* suit is commonly known as the "relators' share."

Thorpe and Hamrick hired Keith Cross and Cross & Bennett (collectively, "C&B") to represent them in a whistleblower suit against GSK concerning the off-label marketing of certain drugs.  P&C filed a separate suit against GSK on behalf of two different whistleblowers alleging overlapping—but not identical—claims.  The federal government ("The government") conducted a joint investigation of the allegations in both suits.  The two sets of plaintiffs agreed that Thorpe and Hamrick would receive 50% of the aggregate relators' share from both suits, and P&C's clients would receive the remaining 50% of that aggregate relators' share (this agreement is referred to herein as

MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

the "Relators' Share Agreement"). In 2012, the government settled the lawsuits against GSK. Thorpe and Hamrick have received or will receive over $74 million for their participation in those suits (before payment of their attorneys' fees).

Thorpe and Hamrick, however, view their $74 million recovery as inadequate. As soon as it became clear that they would be the beneficiaries of a substantial recovery, Thorpe and Hamrick began attempting to reduce the contingent fee they agreed to pay C&B for representing them, while simultaneously scheming to repudiate the Relators' Share Agreement and to claim a greater share of any settlement. They now contend that C&B's representation of them in the GSK lawsuits was so substandard that Thorpe and Hamrick should be excused from their obligation to pay any legal fees to C&B, and that C&B instead should pay them another $75 million in damages.

Because the Subpoena seeks to compel Ms. Kelton to disclose attorney work product that is exempt from discovery, and because the Subpoena would impose unwarranted burdens far outweighing the purported relevance of any information in Ms. Kelton's possession, the Court should quash the Subpoena or, in the alternative, should issue a protective order precluding Ms. Kelton from being subjected to deposition or preventing unwarranted intrusion into Ms. Kelton's thoughts, impressions, and intentions that are protected as attorney work product.

## II.   SUMMARY OF FACTS AND PROCEDURAL HISTORY

This case involves a dispute between Plaintiffs and their attorneys, C&B, over C&B's alleged malpractice and C&B's right to attorneys' fees for representing Thorpe and Hamrick in a *qui tam*, or "whistleblower" suit against GlaxoSmithKline LLC under the FCA and similar state statutes.

Thorpe and Hamrick, represented by C&B, filed one such suit. Ex. 1, ¶ 81.[1] Thomas Gerahty and Matthew Burke (neither of whom is a party in this litigation),

---

[1] Citations herein to exhibits refer to exhibits to the Declaration of Stephen Hasegawa,

represented by P&C, filed another. Ex. 1 at 96; Ex. 2 at p. 23, ¶ 31. The suits (collectively, the "GSK lawsuits") were coordinated for the purpose of the government's investigation of the whistleblowers' allegations, and later were formally consolidated. *See, e.g.*, Ex. 2, ¶¶ 35, 43, 76; Ex. 3 at p. 8, ¶ 43, p. 13, ¶ 76.

The FCA provides that "when a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). As Thorpe and Hamrick explain, "[t]he first to file rule only protects the claims that the relator actually asserts. Where a subsequently filed complaint pleads facts and claims distinct from those pled in the first filed complaint, the relator who filed the second complaint will be considered the first-to-file with respect to those facts and claims." Ex. 1, ¶ 25. Thorpe and Hamrick were the first to file a complaint against GSK containing certain claims; according to Thorpe and Hamrick's own complaint, Gerahty and Burke were the first to file complaints against GSK asserting other claims. Ex. 1, ¶¶ 81, 91, 93, 105-06, 108, 129. In addition, the complaints brought by P&C's clients—two senior GSK insiders with knowledge of company-wide activity—contained far more detail than Thorpe and Hamrick's complaint, and therefore bore less risk of being dismissed under Federal Rule of Civil Procedure 9(b). Ex. 1, ¶ 105; Ex. 2 at p. 23, ¶ 31. Thus, both sets of plaintiffs faced risks that substantial portions of any recovery would go to the other set of plaintiffs. In light of those risks, in early 2004, Thorpe, Hamrick, Burke, and Gerahty agreed to pool their resources (including the resources of their respective attorneys, P&C and C&B) and to share any whistleblower reward resulting from their cases. Ex. 1, ¶¶ 112; Ex. 2 at p. 23-24, ¶¶ 31, 33; Ex. 3, ¶¶ 31, 33. The plaintiffs in the GSK lawsuits agreed that Thorpe and Hamrick would receive 50% of the total relators' share in the GSK lawsuits; Gerahty and Burke would receive the other 50%. Ex. 1, ¶¶ 111-112; Ex. 2 at p. 8, ¶ 43,

---

filed concurrently herewith.

p. 23, ¶ 33; Ex. 3, ¶ 33.  As Thorpe and Hamrick acknowledge, in reliance upon that agreement, P&C worked cooperatively with Thorpe and Hamrick's counsel to maximize the recovery by the government (to the benefit of all plaintiffs).  Ex. 1 at ¶ 163 (stating that P&C did "the great majority of the work" on the GSK lawsuits).

In 2012, GSK and the government finalized a settlement of the GSK lawsuits for civil damages of $1.017 billion (as part of a $3 billion settlement that included criminal penalties).  Ex. 2 at p. 34, ¶¶ 78-79; Ex. 3 at p. 13, ¶ 78-79.  The settlement made Thorpe and Hamrick very rich men.  Pursuant to their express, informed agreement to split the relators' share in the GSK lawsuits 50-50 with P&C's clients, Thorpe and Hamrick received, or are to receive, over $74 million from the settlement of the GSK lawsuits (prior to payment of attorneys' fees).  Ex. 2 at p. 35, ¶ 83; Ex. 3, ¶ 83.

Nonetheless, Thorpe and Hamrick feel undercompensated.  In September 2009, as soon as it became clear that a substantial recovery was highly probable—due in large part to years of P&C's work pursuant to all plaintiffs' agreement to pool their resources under the Relators' Share Agreement, *see* Ex. 1, ¶ 163 —Thorpe and Hamrick began seeking ways to increase their share of that recovery.  Thorpe schemed to repudiate the Relators' Share Agreement and to reduce Gerahty and Burke's share from 50% to "25-30%" of the total relators' share.  Ex. 2 at p. 30, ¶ 59; Ex. 3, ¶ 59.

Thorpe and Hamrick also proposed to reduce C&B's agreed-upon contingency fee from 40% to 24% of their recovery and to associate new co-counsel with an 8% contingency fee, thereby reducing their overall contingency fee obligation from 40% to 32%.  In October 2009, when C&B rejected that proposal, Thorpe and Hamrick fired C&B.  Ex. 2 at 31, ¶ 66; Ex. 3 at 12, ¶ 66.  The next day, Thorpe wrote to Cross, threatening that "[m]y legal options are endless, and could be highly detrimental to your future in the legal profession .... [Y]ou have more money than you need right now ...."  Ex. 2 at 31-32, ¶ 67; Ex. 3 at 12, ¶ 67.  A week later, Thorpe again threatened that C&B's conduct might "trigger a malpractice suit and we would attempt to deny you anything in

the matter, up to and including any attorney fees and costs." Ex. 2 at 32, ¶ 68; Ex. 3 at 12, ¶ 68.

C&B did not yield to Thorpe's threats. Thorpe and Hamrick sued C&B for malpractice, contending, as Thorpe had warned, that Thorpe and Hamrick need not pay C&B its agreed-upon contingent fee for C&B's work on the GSK lawsuits and that C&B additionally is liable for $75 million in damages to Thorpe and Hamrick. Ex. 1, ¶¶ 1, 194, 204. C&B counterclaimed for payment of the 40% contingency fee to which Thorpe and Hamrick had agreed. Ex. 2 at 36.

Thorpe and Hamrick's malpractice claims and C&B's counterclaim for fees do not depend in any way upon information in Ms. Kelton's possession. Neither Ms. Kelton nor P&C is a party in this lawsuit. Neither Thorpe and Hamrick nor C&B have sought any relief from Ms. Kelton or P&C nor alleged any facts upon which any such relief could be sought. *See* Exs. 1, 2. Ms. Kelton has never represented Thorpe or Hamrick in any lawsuit.

On October 29, 2013, Thorpe and Hamrick served Ms. Kelton with a deposition subpoena. P&C and Ms. Kelton's counsel met and conferred telephonically with Thorpe and Hamrick's counsel on November 11, 2013 concerning the subpoena. In that conversation, Thorpe and Hamrick's counsel stated that, in the deposition, Thorpe and Hamrick would seek Ms. Kelton's testimony concerning (1) Ms. Kelton's recollections concerning Keith Cross's conduct during the GSK lawsuits, including Mr. Cross's conversations with Ms. Kelton; (2) Ms. Kelton's recollections concerning P&C and C&B's review of documents made available by the government during the GSK lawsuits; (3) Ms. Kelton's opinions concerning Mr. Cross's representation of Thorpe and Hamrick; and (4) two letters that P&C sent to attorneys for the government (a co-party in the GSK lawsuits) on behalf of P&C's clients, setting forth P&C's legal analysis of certain issues in the case. Hasegawa Decl., ¶ 10.

MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

Ms. Kelton does not have any non-privileged, non-work product information relevant to Thorpe and Hamrick's malpractice claims or C&B's fee counterclaim that cannot be obtained (presumably in greater detail) from defendants in Thorpe and Hamrick's malpractice suit or from the government.

## III.   ARGUMENT

### A.   The Court should Quash the Subpoena Because the Information Sought is Protected Work Product

#### 1.   The Information Thorpe and Hamrick Seek is Kelton and P&C's Protected Work Product

The Supreme Court established the work-product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947). The doctrine is "intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998), *quoting Hickman*, 329 U.S. at 510-11.

The work product doctrine has been "partially codified" in Federal Rule of Civil Procedure 26(b)(3). *United States v. Deloitte LLP*, 610 F.3d 129, 124-35 (D.C. Cir. 2010). That rule, however, addresses only written work product. Fed. R. Civ. Proc. 26(b)(3) (providing protection for "documents and tangible things" prepared by or for a party in anticipation of litigation). As the D.C. Circuit has recognized, intangible work product, which is not governed by Rule 26(b)(3), remains protected by the broader scope defined in *Hickman*. *See Deloitte*, 610 F.3d at 136 ("*Hickman's* definition of work product extends to 'intangible' things. … *Hickman* provides work-product protection for intangible work product independent of Rule 26(b)(3)").

Work product generally falls into two categories. One category, often described as "ordinary work product" or "fact work product," is presumptively protected from disclosure, but may be discoverable upon a showing of "substantial need" for the material and an inability to obtain equivalent information "without undue hardship." Fed. R. Civ. Proc. 26(b)(3)(A)(ii). The second category, often described as "opinion work product,"

consists of information that discloses "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," and "is virtually undiscoverable." *Deloitte*, 610 F.3d at 135.

Thorpe and Hamrick seek two things from Ms. Kelton: first, her recollection of conversations and events that occurred in the course of Ms. Kelton's representation of P&C's clients; and second, her opinions and legal analyses of matters that Thorpe and Hamrick deem relevant to their case (*e.g.*, the quality of C&B's representation of Thorpe and Hamrick, or the legal bases for the whistleblowers' entitlement to a share of the government's recovery in the GSK Lawsuits). Hasegawa Decl., ¶ 10. Both of those categories of information are paradigmatic "opinion work product," and are beyond the permissible scope of discovery.

Lawyers' opinions and analyses are, by definition, paradigmatic opinion work product. It is beyond dispute that they are entitled to the protections of the work product rule as set forth in *Hickman* and subsequent cases. But an attorney's recollections formulated in the course of representing that attorney's client also qualify as opinion work product.

An attorney's "personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties … fall[] outside the arena of discovery …."[2] *Hickman*, 329 U.S. at 462 (emphasis added). Such "personal recollections" constitute "the mental impressions of an attorney," and therefore are entitled to the absolute protection afforded to opinion work product. *Id.*; *see also Upjohn Co. v. United States*, 449 U.S. 383, 397, 399 (1981) (quoting *Hickman*, recognizing that "personal recollections" of attorneys are work product, and noting that "oral statements of witnesses" constitute work product if they are "presently in the form of [the attorney's]

---

[2] Thorpe and Hamrick assert that they are only seeking underlying facts, not mental impressions. But that argument ignores the inescapable truth that, in attempting to depose Ms. Kelton, they are seeking Ms. Kelton's recollection of those facts.

mental impressions," *i.e.*, the attorney's recollections).  Courts routinely follow this clear guidance.  *See In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) ("[I]ntangible work product includes thoughts and recollections of counsel, ... [and] is often eligible for the special protection accorded opinion work product") (*quoting* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024, at 337 (2d ed. 1994)); *In re Burlington Northern, Inc.*, 822 F.2d 518, 524-25 (5th Cir. 1987) ("[D]iscovery of the attorney's ... personal recollections ... would inhibit the attorney's effort to fully explore and develop the position he has been asked to advocate") (internal quotes and citations omitted); *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973) ("It is clear that [the attorney's] personal recollections ... pertaining to his conversations with nonemployees of his client are within the rubric of the work product definition" and are "absolutely, rather than conditionally, protected").

Indeed, without protection for attorneys' intangible "personal recollections," the protection for written work product created by *Hickman* and codified in Rule 26(b)(3) would make no sense.  Written work product is elevated to the status of opinion work product if—and because—it reveals an attorney's mental impressions, including the attorney's "personal recollections." *See, e.g.*, *Upjohn*, 449 U.S. at 399-400 (holding that memoranda of oral statements by witnesses are entitled to opinion work product treatment because "the statement would be [the attorney's] language, permeated with his inferences") (citations omitted).  It is the disclosure of the attorney's mental processes (including the attorney's recollections), and not the tangible nature of the materials, that marks the materials as opinion work product. *See, e.g.*, *Upjohn*, 449 U.S. at 400 (noting that *Hickman* drew "special attention to the need for protecting an attorney against discovery of memoranda prepared from <u>recollection</u> of oral interviews") (emphasis added).  If a lawyer's written statement of her recollection of events or statements is protected as work product, her intangible recollection of those oral statements cannot be treated differently. "What lawyers remember is just as privileged as what they write

down." *Director of Office of Thrift Supervision v. Vinson & Elkins, L.L.P.*, 168 F.R.D. 445, 448 (D.D.C. 1996) (denying motion to require attorneys to testify regarding their recollection of statements).

Numerous courts—including courts in this District—have refused, on work product grounds, to compel lawyers to testify about their recollections of events, conversations, or statements made in the course of the lawyers' representation of their clients. In *Vinson & Elkins*, for example, the government sought both attorney notes and attorneys' depositions to establish or corroborate what was stated in the government's interview of Vinson & Elkins' client, at which Vinson & Elkins' attorneys were present. *Vinson & Elkins*, 168 F.R.D. at 445-46. Although the interview itself was not protected—the court noted that both government attorneys and the defendant would testify about the content of that interview, *id.* at 447-48—the court "den[ied] [the government's] demand that the attorneys be required to submit to additional questioning" regarding the content of the interviews, because "[w]hat lawyers remember is just as privileged as what they write down." *Id.* at 448.

Similarly, in *In re Sealed Case*, a corporation sought to depose the Securities Exchange Commission concerning, among other things, interviews with witnesses conducted in connection with an insider-trading investigation. *In re Sealed Case*, 856 F.2d 268, 273 (D.D.C. 1988). The court denied the request, holding that the Commission's staff's "recollections of the interviews … are protected attorney work product," subject to the heightened protection of opinion work product. *Id.* And in *In re Grand Jury Subpoena (Zerendow)*, the District of Massachusetts (the District in which Thorpe and Hamrick's malpractice suit is pending) considered a grand jury subpoena seeking the testimony of a lawyer concerning the content of an interview of the lawyer's client by a law enforcement agency. *In re Grand Jury Subpoena (Zerendow)*, 925 F. Supp. 849, 852 (D. Mass. 1995). The court denied the government's motion to compel the testimony: "The government does not seek production of the attorney's notes of the

interview of his client, but his testimony as to his recollection of that conversation. These attorney recollections fall squarely within the contours of the work product doctrine." *Id.* at 854.

In this case, Thorpe and Hamrick seek the recollections, opinions, and analyses of an attorney—Ms. Kelton—formulated in the course of her representation of clients in litigation. Those recollections, opinions, and analyses are opinion work product, and cannot be disclosed. Because Thorpe and Hamrick seek nothing from Ms. Kelton but opinion work product, the Court should quash the subpoena for her deposition.

2.    Third-Party Work Product Is Protected by the *Hickman* Rule

Thorpe and Hamrick contend that Ms. Kelton's mental impressions are not protected by the work product rule because she is not a party in the case in which they seek the information. Hasegawa Decl., ¶ 11. This is a frivolous argument.

First, Thorpe and Hamrick's argument is premised upon their reading of Rule 26(b)(3). But, as explained above, Rule 26(b)(3) is irrelevant here, because that rule applies only to written work product. Fed. R. Civ. Proc. 26(b)(3). Intangible work product is governed by the broader scope of *Hickman* itself. *See Deloitte*, 610 F.3d at 136 ("*Hickman's* definition of work product extends to 'intangible' things. ... *Hickman* provides work-product protection for intangible work product independent of Rule 26(b)(3)"). Nothing in *Hickman* (or elsewhere) suggests that the protections created in *Hickman* apply only when the work product is sought in the same case in which it was created—a nonsensical rule that would frustrate the very policies the Supreme Court sought to advance in *Hickman*. To the contrary, numerous courts recognize that "the work-product doctrine articulated in *Hickman* and its progeny ... is broader than the protection supplied by Rule 26(b)(3)," and protects third-party work product. *Crosby v. City of New York*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010) (holding that *Hickman* protected third-party work product); *see also, e.g., Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 699 (N.D. Ga. 2007) ("Rule 45 [] and *Hickman* suggest that the scope of [work product]

MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

protection should extend to a non-party ..."); *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603, at *31-32, 34 (E.D. Pa. Nov. 29, 2006) (extending work product protection to third party because "*Hickman* itself provides authority to protect work product outside the terms of Rule 26(b)(3)"); *Haus v. City of New York*, 2006 U.S. Dist. LEXIS 85225, at *11 (S.D.N.Y. Nov. 17, 2006) ("the inapplicability of Rule 26(b)(3) does not preclude granting similar immunity under the common-law work-product doctrine"); *Abdell v. City of New York*, 2006 U.S. Dist. LEXIS 66114, at *12-14 (S.D.N.Y. Sep. 14, 2006) (protecting third-party work product because "the work product doctrine as articulated in *Hickman* ... is broader than Rule 26(b)(3)"). These courts hold that non-parties may invoke work product protection when doing so "vindicate[s] the purposes underlying the [*Hickman*] doctrine," *i.e.*, protection of attorneys' ability to formulate legal theories and prepare cases without intrusion from adversaries, preventing opponents from "free-loading" off of adversaries' work, and preventing interference with litigation. *Crosby*, 269 F.R.D. at 277. Because attorneys' investigation and analysis would be chilled if those attorneys believed their work product could be used by adversaries in related litigation, and because disclosure of P&C's work product would enable Thorpe and Hamrick's attorneys to "freeload" off of P&C's work, the "zone of privacy" created by *Hickman* should apply here.[3]  *See Allied Irish Banks, p.l.c. v. Bank of America*, 252 F.R.D. 163, 175 (S.D.N.Y. 2008)

---

[3] It is particularly important in this case to protect Ms. Kelton's and P&C's work product from intrusion by Thorpe and Hamrick, because part of the basis for Thorpe and Hamrick's suit against C&B is that they believe that the recovery obtained by P&C's clients rightfully belonged to Thorpe and Hamrick. By Thorpe's own admission, Thorpe and Hamrick have been seeking, since 2009, a basis on which to enrich themselves at the expense of P&C's clients. *See* Ex. 2 at 30, ¶ 59; Ex. 3 at 11, ¶ 59. Thorpe and Hamrick have already used documents P&C produced in response to a subpoena in this case to threaten P&C. Hasegawa Decl., ¶ 7. Courts are careful to prohibit disclosure where the requesting party is potentially adverse to the third party claiming work product protection. *See Zagklara v. Sprague Energy Corp.*, 2011 U.S. Dist. LEXIS 56782, at *6-7 (D. Me. May 26, 2011) (holding that courts should not "countenance" efforts by parties to seek work product from potential adversaries); *Jean v. City of New York*, 2010 U.S. Dist. LEXIS 2282, at *6-7 (E.D.N.Y. Jan. 12, 2010) (extending work product protection

Second, Thorpe and Hamrick's argument that work product is protected under *Hickman* only in the litigation for which it was prepared is contradicted by unanimous authority holding that *Hickman*'s protections extend into subsequent litigation. *See Delaney, Midgail & Young, Chartered v. IRS*, 826 F.2d 124, 137 (D.C. Cir. 1987) ("[M]aterial prepared in anticipation of litigation remains privileged after litigation ends") (*citing FTC v. Grolier, Inc.*, 462 U.S. 19, 25 (1983)); *In re Murphy*, 560 F.2d 326, 334-45 (8th Cir. 1977) ("The fact that the subsequent litigation is not related does not provide a sufficient basis for disregarding the privilege articulated in *Hickman*.... The mischief engendered by allowing discovery of work product recognized in *Hickman* would apply with equal vigor to discovery in future, unrelated litigation").

Third, some courts have held that third-party work product is excluded from discovery because Rule 45 itself "specifically permits non-parties to seek protection from a subpoena that 'requires disclosure of privileged or other protected matter." *Allied Irish Banks* 252 F.R.D. at 173 (emphasis added), *citing* Fed. R. Civ. Proc. 45(c)(3)(A)(iii); *see also ASARCO, LLC v. Americas Mining Corp.*, 2007 U.S. Dist. LEXIS 84604, at *17 (D. Ida. Nov. 15, 2007) (language of Rule 45 "protects against discovery of third-party work product in appropriate cases"); *Carnes*, 244 F.R.D. at 699 ("Rule 45 [] and *Hickman* suggest that the scope of [work product] protection should extend to a non-party ..."); *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603, at *32-33 ("Rule 45 does not define what privileges and protections are to be enforced under its terms, but the

---

to non-party district attorney because "there is at least the possibility of further litigation between the DA and the plaintiff" seeking documents); *800 Front Street Corp. v. Travelers Prop. Cas. Co.*, 2006 U.S. Dist. LEXIS 84160, at *9-10 (E.D.N.Y. Nov. 20, 2006) (extending work product protection to materials prepared for non-party whose case was "expected" to be joined to case in which materials were sought); *Carnes*, 244 F.R.D. at 699 (extending work product protection to non-party who "may be a party to litigation at some point in the future," because it would be "unjust" to require the non-party to provide its work product to a potential adverse party); *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771 (M.D. Pa. 1985) (applying Rule 26(b)(3) to prevent disclosure of non-party work product "to a party who may subsequently join the non-party in the litigation").

language is broad enough to include protection against discovery of third-party work product in appropriate cases"). Thus, Ms. Kelton's and P&C's work product is protectable under Rule 45.

3.    The Court Should Quash the Subpoena for Kelton's Deposition

In sum, Thorpe and Hamrick seek Ms. Kelton's testimony concerning her opinions, analyses, and recollections concerning events and conversations that occurred in the course of her representation of P&C's clients in the GSK Lawsuits.  Pursuant to explicit, controlling authority—including Supreme Court authority—those opinions, analyses, and recollections constitute "opinion work product," and cannot be disclosed, even upon a showing of "substantial need."  Contrary to Thorpe and Hamrick's argument, this protection applies even though the entity invoking the work product rule is a third party, rather than a party to the case in which the documents are being sought. And Rule 45 explicitly permits the Court to quash a subpoena that seeks privileged "<u>or other protected matter</u>," including, as many courts have recognized, third-party work product.  Fed. R. Civ. Proc. 45(c)(3)(A)(iii) (emphasis added).  Because Thorpe and Hamrick's subpoena to Ms. Kelton seeks only such protected matter, the Court should quash the subpoena.

**B.    In the Alternative, the Court Should Issue a Protective Order Precluding Disclosure of Kelton's Opinions, Analyses, or Personal Recollections**

The Federal Rules provide that, "for good cause," a court may "issue an order to protect a party or person from … undue burden …."  Fed. R. Civ. Proc. 26(c).  As countless courts recognize, this language "is sufficiently sweeping to authorize a protective order preventing the undue burden of disclosing third-party work product in appropriate cases." *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603, at *33-34 (granting protective order as to third party attorney work product under Rule 26(c)); *see also, e.g., SEC v. Schroeder*, 2009 U.S. Dist. LEXIS 39378, at *15-16 n.3 (N.D. Cal. Apr. 27, 2009) (court could issue protective order under Rule 26(c) to protect non-party work

product); *Allied Irish Banks*, 252 F.R.D. at 173 (holding that inapplicability of Rule 26(b)(3) "does not preclude granting similar immunity under the … 'good cause' balancing test that is incorporated in Federal Rule of Civil Procedure 26(c)") (citation omitted); *ASARCO*, 2007 U.S. Dist. LEXIS 84604, at \*17 ("A protective order may be issued under Rule 26(c) to prevent disclosure" of non-party work product.).

As these courts have recognized, the disclosure of non-party work product is itself a cognizable "undue burden" that warrants the entry of a protective order. *See Carnes*, 244 F.R.D. at 699 ("[R]equiring UPS to provide its information to a potentially adverse party or co-tortfeasor would be 'unduly burdensome' and therefore, unjust"); *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 86603, at \*33-34 (recognizing the "undue burden of disclosing third-party work product"); *Basinger*, 107 F.R.D. at 772 ("[I]f a party to litigation is partially protected by Rule 26(b)(3) from having to disclose certain information to an opposing party, it is unduly 'burdensome' and therefore, unjust, to require a non-party to deliver the same kind of information to a party who may subsequently join the non-party in the litigation"). Under this authority, a party's effort to use discovery to obtain a third party's work product is itself a sufficient basis for the Court to issue a protective order precluding the discovery sought.

Accordingly, Rule 26(c) provides an independent basis to grant the Motion. Thorpe and Hamrick acknowledge that they seek Ms. Kelton's opinions, analyses, and personal recollection of events and conversations occurring in the course of her representation of P&C's clients—paradigmatic attorney work product. The Court therefore should issue a protective order precluding the deposition, or, at a minimum, and order precluding Thorpe and Hamrick from asking any questions at the deposition concerning Ms. Kelton's or P&C's opinions, analyses, or personal recollection.

**C.    The Court Should Apply the *Shelton* Rule to Preclude the Deposition of Counsel**

A third, independent reason to quash Thorpe and Hamrick's subpoena or issue a protective order preventing Ms. Kelton's deposition is the strong policy against depositions of counsel.

"Depositions of opposing counsel are generally disfavored in federal courts." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009) (shifting burden to the requesting party to prove relevance and necessity of taking opposing counsel's deposition; quashing subpoena because plaintiffs failed to meet that burden); *see also Coleman v. District of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012) ("When a party seeks to depose opposing counsel, the normally permissive discovery rules become substantially less so"); *Sterne Kessler*, 276 F.R.D. at 380-81, *quoting In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003) ("Courts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery"); *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992) ("[A] motion to depose an opponent's attorney is viewed with a jaundiced eye and is infrequently proper").

The perils of such depositions are well-known. As a court in this District recently summarized:

> Depositions of opposing counsel undermine attorney-client communications, present unique opportunities for harassment, … and may spawn collateral litigation on issues of privilege, scope, and relevancy. … Courts therefore presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise.

*Coleman*, 284 F.R.D. at 18. Depositions of attorneys "present a unique opportunity for harassment" because they disrupt the adversarial process and negatively affect attorney-client relationships. *Sterne Kessler*, 276 F.R.D. at 381 (*quoting Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418 (N.D. Ill. 1987)); *see also In re Subpoena Issued to Dennis Friedman*, 350 F.3d at 70 ("Courts have been especially concerned about the

burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery") This is true even if lawyers' testimony is sought in litigation other than the one in which the lawyer rendered services, because clients are unlikely to be open and honest with their attorneys, and the attorneys less likely to perform thorough investigations and analyses, if every document, thought, or recollection could potentially be exposed in future litigation. *Sterne Kessler*, 276 F.R.D. at 381 (describing how depositions of lawyers threaten the adversarial system "by chilling the free and truthful exchange of information between attorneys and their clients").

Courts accordingly have adopted strict rules limiting depositions of opposing counsel. In most jurisdictions, such depositions are prohibited absent a showing that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327; *Corp. for Pub. Broad. v. Am. Auto. Centennial Comm'n*, 1999 U.S. Dist. LEXIS 1072, 1999 WL 1815561, at *1 (D.D.C. Feb. 2, 1999).

Thorpe and Hamrick contend that the *Shelton* test should not apply in this case, because P&C and Ms. Kelton are not opposing counsel in this case. But Thorpe and Hamrick are too coy. They have already contended, in filings in this Court, that P&C and its clients were adverse to Thorpe and Hamrick in the negotiation of the Relators' Share Agreement, one of the topics on which Thorpe and Hamrick seek Ms. Kelton's testimony. *See* Ex. 4 at 3, 22. Moreover, Thorpe and Hamrick have sought, since 2009, ways to enrich themselves at P&C's and P&C's clients' expense. *See* Ex. 2 at 30, ¶ 59; Ex. 3 at 11, ¶ 59. And Thorpe and Hamrick have already used documents P&C produced in response to a subpoena in this case to threaten P&C. Hasegawa Decl., ¶ 7. While P&C is not presently a defendant in any pending lawsuit that Thorpe and Hamrick

have brought, as a practical matter their present relationship can only be described as adversary.

Such circumstances raise the same concerns underlying the *Shelton* test.   A deposition of Ms. Kelton, no less than a deposition of opposing counsel, could "undermine attorney-client communications, present unique opportunities for harassment, … and may spawn collateral litigation on issues of privilege, scope, and relevancy." *Coleman*, 284 F.R.D. at 18.  Thus, Thorpe and Hamrick should not be permitted to depose Ms. Kelton unless "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.

Thorpe and Hamrick cannot satisfy this standard.  First, other means plainly exist to obtain the information Thorpe and Hamrick seek.  Thorpe and Hamrick already have obtained from C&B copies of all written communications between P&C and C&B; to the extent that they contend (without factual foundation) that C&B might have lost some written communications with P&C, they can ask C&B and its principals about such communications in discovery.[4]  Similarly, to the extent that Thorpe and Hamrick seek information about the government's collection of documents for C&B and P&C's review (*see* Hasegawa Decl., ¶ 10), they can obtain those details either from C&B or from the government itself, which obviously has better and more comprehensive information about what documents it made available and on what terms.  Second, as described above, all of the information that Thorpe and Hamrick seek from Ms. Kelton is paradigmatic

---

[4] C&B is a superior source of this information for another reason.  While it would unlawfully interfere with P&C's and its clients' work product to force P&C or Ms. Kelton to disclose their opinions and "personal recollections," the same is not true of any disclosure by C&B.  In malpractice cases, clients and lawyers cannot shield from each other the privileged or work product materials created in the course of the attorney-client relationship.  *See Ideal Elect. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) ("[T]he attorney-client privilege is waived when the client places otherwise privileged matters in controversy").

MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

opinion work product.  Third, Thorpe and Hamrick cannot show that the information they seek from Ms. Kelton is crucial to their case.  It is not clear, for example, why Thorpe and Hamrick believe that the scope and terms of the government's agreement to allow C&B and P&C to review documents has anything to do with their malpractice case.  And Ms. Kelton is highly unlikely to have any recollection at all about particular conversations and events.  Thorpe and Hamrick's request to depose Ms. Kelton is a pure "fishing expedition"—occasionally permissible in ordinary discovery, but prohibited when the target of the discovery is adversary counsel.

In sum, Thorpe and Hamrick cannot meet the high burden required when a party seeks to depose adversary counsel.  For this independent reason, Plaintiffs respectfully request that the Court quash the subpoena or issue a protective order providing that the deposition of Ms. Kelton shall not be taken.

**D.      In the Alternative, the Court Should Quash the Subpoena Because the Burden of the Deposition Would Strongly Outweigh the Relevance of Any Non-Work Product Evidence Sought**

1.      A Court Must Limit Discovery if Its Burden Outweighs Its Benefit

A court "must limit the frequency or extent of discovery … if it determines that … the burden or expense of the proposed discovery outweighs its likely benefit …." Fed. R. Civ. Proc. 26(b)(2)(C).  This duty is heightened when discovery is sought from a non-party:  a court "must quash or modify [a] subpoena that … subjects a person to undue burden." Fed. R. Civ. Proc. 45(c)(3).  "The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties. … '[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.'" *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (*quoting Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).  A court also may, upon a showing of "good cause," issue an order protecting a party or non-party from "oppression, or undue burden or expense." Fed. R. Civ. Proc. 26(c).

A court also must limit discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient [or] less burdensome ...." Fed. R. Civ. Proc. 26(b)(2)(C)(i). *Burlodge Ltd. v. Standex Internat'l. Corp.*, 257 F.R.D. 12, 19 (D.D.C. 2009) (finding that subpoena was "unduly burdensome because of the absence of any showing that the information sought is not available from other sources"); *Wyoming v. U.S. Dep't. of Agriculture*, 208 F.R.D. 449, 454 (D.D.C. 2002) (communications sought from third party also "would be in the hands of the ... defendants, and thus intrusion into the activities of the non-party witnesses is unwarranted and unnecessarily burdensome").

## 2.     The Deposition Would Be Unduly Burdensome to Ms. Kelton

The deposition of Ms. Kelton would impose significant burdens on P&C and Ms. Kelton. It would require Ms. Kelton to interrupt the work she is performing on behalf of P&C's clients in order to prepare for and be subjected to a deposition for a case in which her testimony is unnecessary and unwarranted. In addition, P&C's general counsel, who is located in San Francisco and who has been responsible for P&C's responses to Thorpe and Hamrick's requests for information, would have to interrupt his own representation of P&C's clients to fly across the country to defend the deposition. In light of the significant work-product issues set forth above, the likelihood of similar privilege issues arising during the course of the deposition, Thorpe and Hamrick's prior threats to take action against P&C, and the fact that, in the past, Thorpe and Hamrick have not hesitated to seek information relating to P&C's internal communications and P&C's work on behalf of P&C's clients, the attendance of P&C's general counsel is necessary to guard the confidences of P&C and its clients. Thus, the deposition alone, and the ordinary preparation for it, would occupy the time of two of P&C's nine partners for two days (plus travel time), and would necessitate the expense of cross-country travels and lodging for P&C's general counsel.

Additionally, in light of the issues described above, that burden would be compounded by the high likelihood that the deposition would result in numerous collateral disputes regarding privilege and the scope of the deposition, further occupying the time of P&C's lawyers and of this Court. *See, e.g. Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 382 (D.D.C. 2011) ("[C]hief among the concerns cited by federal courts, is that counsel depositions carry the substantial potential of spawning litigation over collateral issues related to assertion of privilege, scope, and relevancy, that only end up imposing additional pretrial delays and costs on both parties and burdens on the courts to resolve work-product and privilege objections")(*citing Shelton*, 805 F.2d at 1327)  ("It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony").  Here, the cost of litigation regarding the appropriate scope of the deposition would fall on non-parties P&C and Ms. Kelton.

      3.      The Burden of the Deposition Outweighs the Limited Relevance of Any Non-Privileged Work Product Available to Thorpe and Hamrick.

The burden described above substantially outweighs any likely relevance because there is nothing about which Ms. Kelton can testify that is not subject to work product protection.  As described above, Ms. Kelton's personal recollections, opinions, and legal analyses are absolutely protected by the work product rule.  And even if, contrary to law, Thorpe and Hamrick were entitled to obtain factual information by sifting through Ms. Kelton's protected personal recollections, opinions, and analyses, any such underlying facts necessarily will be duplicative of information that Thorpe and Hamrick can obtain from sources that do not implicate privilege or work product issues, such as including but not limited to C&B's document production, interrogatories to C&B, or Cross' testimony. *See Sterne Kessler*, 276 F.R.D. at 385 ("Simply claiming that an opposing party's former counsel has 'non-privileged, factual information' without specifying precisely what

information is sought or the benefit of that information is insufficient to overcome the potential risks that the Federal Rules were intended to protect against").

Finally, the potential relevance of Ms. Kelton's testimony is inherently limited, aside from issues of work product protection, as she is unlikely to have a detailed recollection of any relevant events, given that many of the events and conversations in question occurred as long as a decade ago. For example, the principal issue on which Thorpe and Hamrick appear to want Ms. Kelton's testimony is the content of communications between Ms. Kelton and Mr. Cross during the negotiation of the Relators' Share Agreement. That agreement was negotiated between July 2003 and January 2004. Ex. 1, ¶ 96-99, 112. It is highly unlikely that Ms. Kelton would have a detailed recollection of communications a decade ago, or that her recollection would add anything meaningful to the written communications and oral testimony that Thorpe and Hamrick have already obtained or will obtain from C&B itself. Ms. Kelton simply does not have any information that would warrant the burden of the deposition that Thorpe and Hamrick seek.

## IV.    REQUEST FOR ORAL ARGUMENT

Counsel for P&C and Ms. Kelton requests oral argument on this motion.

## V.    CONCLUSION

For the foregoing reasons, non-parties Erika Kelton and Phillips & Cohen LLP requests that the Court quash the Subpoena, or in the alternative, issue a protective order precluding the discovery sought.

Dated:  November 25, 2013

Peter W. Chatfield, Esq.
  (D.C. Bar No. 418576)
PHILLIPS & COHEN LLP
2000 Massachusetts Ave., N.W.
Washington, D.C. 20036
Tel:  (202) 833-4567

Fax:  (202) 833-1815
Email:  peter@phillipsandcohen.com


Stephen Hasegawa, Esq.
(Application for admission *pro hac vice* pending)
PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300
San Francisco, CA 94105
Tel:  (415) 836-9000
Fax:  (415) 836-9001
Email:  ssh@pcsf.com

Attorneys for non-party subpoena recipient
PHILLIPS & COHEN LLP

MOTION TO QUASH OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER

FILED

NOV 2 6 2013

Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD-PARTY SUBPOENA FOR DEPOSITION | Case No. _____ |
| GREGORY THORPE and BLAIR HAMRICK, | Related cases: |
| Plaintiffs, | No. 1:13-mc-00405-JEB-DAR<br>Before the Honorable Deborah A. Robinson in the<br>DISTRICT COURT FOR THE DISTRICT<br>   OF COLUMBIA |
| v. | |
| KEITH F. CROSS, JOSEPH F. BENNETT, and CROSS & BENNETT L.L.C., | No. 1:12-cv-11632-RWZ<br>Pending in the DISTRICT COURT FOR THE<br>   DISTRICT OF MASSACHUSETTS |
| Defendants. | |

## DECLARATION OF STEPHEN HASEGAWA IN SUPPORT OF NON-PARTIES PHILLIPS & COHEN LLP AND ERIKA KELTON'S MOTION TO QUASH OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER RE: SUBPOENA

## DECLARATION OF STEPHEN HASEGAWA

I, Stephen Hasegawa, hereby declare and state as follows:

1.      I am an attorney with Phillips & Cohen, LLP ("P&C), counsel for P&C
and non-party subpoena recipient Erika Kelton in the above-captioned matter. I serve as
P&C's General Counsel. I have personal knowledge of the facts set forth in this
Declaration and, if called as a witness, could and would testify competently to such facts
under oath.

2.      P&C represented two clients, Matthew Gerahty and Thomas Burke, in a
*qui tam* suit brought under the False Claims Act against GlaxoSmithKline LLC ("GSK").
Ms. Kelton was lead counsel for Gerahty and Burke in that case. Keith Cross, of Cross &
Bennett ("C&B") represented Gregory Thorpe and Blair Hamrick in a separate suit
against GSK. P&C has never represented Thorpe or Hamrick. Thorpe and Hamrick now
are suing C&B for malpractice arising out of C&B's representation of them in the
underlying lawsuit against GSK.

3.      I have obtained copies of the operative pleadings in *Thorpe, et al. v.
Cross, et al.*, Case No. 12-cv-11632-RWZ (D. Mass.) (the "Malpractice Action"), the
case in which the subpoena at issue was issued. I obtained those pleadings by
downloading them from the PACER site for the District of Massachusetts.

4.      Attached as Exhibit 1 is a true and correct copy of Gregory Thorpe and
Blair Hamrick's Complaint against Keith F. Cross, Joseph F. Bennett, and Cross &
Bennett L.L.C., filed on August 31, 2012 in the Malpractice Action.

5.      Attached as Exhibit 2 is a true and correct copy of the First Amended
Answer of Defendants Keith F. Cross, Joseph F. Bennett, and Cross & Bennett L.L.C. to

the Plaintiffs' Complaint (which includes, beginning at page 16, Cross & Bennett

L.L.C.'s Counterclaim Against Gregory W. Thorpe and Blair Hamrick), filed on

November 16, 2012 in the Malpractice Action.

      6.     Attached as Exhibit 3 is a true and correct copy of Thorpe and Hamrick's

Answer to Cross & Bennett's [Amended] Counterclaim, filed on November 26, 2012 in

the Malpractice Action.

      7.     In response to a document subpoena served on P&C in connection with

Thorpe and Hamrick's malpractice action, P&C produced certain documents relating to

Thorpe's submission of information to P&C in an attempt to retain P&C (P&C declined

that representation).  On April 18, 2013, shortly after receiving those documents, counsel

for Thorpe and Hamrick sent P&C a letter asserting that, on the basis of the documents

produced, they perceived ethical concerns regarding P&C's representation of Gerahty

and Burke in the GSK lawsuits.  Later, in a filing in this Court concerning P&C's motion

to quash a document subpoena (which this Court granted on November 19, 2013), Thorpe

and Hamrick asserted that "if discovery in [this case] uncovers misconduct by P&C, it

will be up to Thorpe to decide whether or how to pursue that." *See* Pl.'s Opp'n to P&C's

Mot. To Quash or, in the Alternative, for Protective Order, *In re Third-Party Subpoena to

Produce Documents*, No. 1:13-mc-00405-JEB-DAR (D.D.C., filed May 28, 2013).

      8.     Relevant excerpts of Pl.'s Opp'n to P&C's Mot. To Quash or, in the

Alternative, for Protective Order, *In re Third-Party Subpoena to Produce Documents*,

No. 1:13-mc-00405-JEB-DAR (D.D.C., filed May 28, 2013) are attached as Exhibit 4

hereto.

9.     On October 29, 2013, Ms. Kelton was served with a Deposition Subpoena in a Civil Action (the "Subpoena"). A true and correct copy of the Subpoena is appended as Exhibit 5 hereto.

10.     On November 11, 2013, I met and conferred with counsel for Thorpe and Hamrick concerning P&C's objections to the Subpoena. In that conversation, Thorpe and Hamrick's counsel stated that, in the deposition, Thorpe and Hamrick would seek Ms. Kelton's testimony concerning (1) Ms. Kelton's recollections concerning Keith Cross's conduct during the GSK lawsuits, including Mr. Cross's conversations with Ms. Kelton; (2) Ms. Kelton's recollections concerning P&C and C&B's review of documents made available by the government during the GSK lawsuits; (3) Ms. Kelton's opinions and analyses concerning Mr. Cross's representation of Thorpe and Hamrick; and (4) two letters that P&C sent to attorneys for the government (a co-party in the GSK lawsuits) on behalf of P&C's clients, setting forth P&C's legal analysis of certain issues in the case. I stated that Ms. Kelton's personal recollections and mental impressions are protected as attorney work product and are outside the scope of discoverable material.

11.     Counsel for Thorpe and Hamrick stated that Ms. Kelton's mental impressions are not protected by the work product rule because they are only seeking relevant, non-privileged factual information and because she is not a party in the case in which they seek the information.

12.     If Ms. Kelton were required to comply with the subpoena, it would require Ms. Kelton to interrupt the work she is performing on behalf of P&C's clients in order to prepare for and be subjected to the deposition. In addition, I would be required to interrupt my own practice on behalf of P&C's clients to fly to Washington, D.C. to

prepare for and defend the deposition.  In my role as P&C's general counsel, I have been the attorney principally responsible for P&C's responses to Thorpe and Hamrick's various requests for information.  In light of the significant work-product issues set forth above, the likelihood of similar privilege issues arising during the course of the deposition, Thorpe and Hamrick's prior threats to take action against P&C, and the fact that, in the past, Thorpe and Hamrick have not hesitated to seek information relating to P&C's internal communications and P&C's work on behalf of P&C's clients, my attendance at any deposition of Ms. Kelton is necessary to guard the confidences of P&C and its clients.  Thus, the deposition alone, and the ordinary preparation for it, would occupy the time of two of P&C's nine partners for two days (plus travel time), and would necessitate the expense of cross-country travels and lodging for me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of November, 2013.


Stephen Hasegawa

DECLARATION OF STEPHEN HASEGAWA - MOTION TO QUASH OR IN THE ALTERNATIVE
FOR PROTECTIVE ORDER