# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE THIRD-PARTY SUBPOENA TO PRODUCE DOCUMENTS | NO.  1:13-mc-00405-JEB-DAR |
| GREGORY THORPE, *et al.*<br><br>Plaintiffs<br><br>vs.<br><br>KEITH F. CROSS, *et al.*<br><br>Defendants | NO.  1:12-cv-11632-RWZ<br>Pending in District of Massachusetts |

## PLAINTIFFS' OPPOSITION TO
## PHILLIPS & COHEN LLP'S MOTION TO QUASH OR,
## IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

Plaintiffs, Gregory Thorpe and Blair Hamrick, submit this Opposition to the Motion to

Quash or, in the Alternative, for Protective Order filed by Phillips and Cohen, LLP ("P&C").

## I.   INTRODUCTION

This non-party discovery dispute arises out of an action filed by Plaintiffs in

Massachusetts alleging gross negligence against their former counsel in a *qui tam* matter filed

in Colorado in 2003.  The principal thrust of the malpractice claim is that counsel's *qui tam*

complaint was so deficient and so vulnerable to attack by subsequent filers that, when a second

filer did come along, represented by P&C, counsel sought to cover-up the malpractice by

persuading Plaintiffs (their clients at the time) to enter into a 50-50 deal with P&C's clients

with respect to the relator's share, the entire amount of which was presumptively Plaintiffs, as

the first-filers under the FCA.  A side benefit of the deal was that the arrival of competent *qui*

fact that all communications relating to the case are directly relevant to the *quantum meruit* fee claim and the defense that C&B's fee is unjustified because P&C was doing all the work.

P&C also argues that it occupies only a "tangential relationship" with this matter and, therefore, should not be burdened with producing communications that are equally available from the Defendants in the case. These arguments might be valid if P&C truly was "tangential" to this matter -- it is not -- and if all the documents were available from another reliable source -- they are not. P&C was the direct beneficiary of Defendants' malpractice and cover-up. P&C ended up making tens of millions of dollars in fees for a case where it didn't even represent the first-filed relator. Moreover, the Defendants have already admitted that emails from critical periods in the case have been lost and cannot certify that it has produced all communications with P&C.

Finally, P&C says that it should not have to produce any information about how it handled the confidential, privileged information it was given by Plaintiff Thorpe (P&C's prospective client) because it fears being sued. P&C ended up representing parties directly adverse to Plaintiffs in the exact same case. Plaintiffs allege that in an effort to avoid a confrontation with P&C that would have revealed Defendants' malpractice to Plaintiffs, C&B refused to aggressively challenge P&C on the question of whether P&C had used any of Thorpe's confidential information in representing its subsequent clients. If discovery in the malpractice case against Defendants uncovers misconduct by P&C, it will be up to Thorpe to decide whether or how to pursue that. However, such potential fallout is no reason to preclude discovery of non-privileged, discoverable information relevant to explicit allegations asserted in Plaintiffs' malpractice claim.

3

Whether or not P&C and C&B had such discussions, the fact remains that C&B prevailed on Plaintiffs to give up fifty percent (50%) of the relator's share without self-disclosing to Plaintiffs the deficiencies of the Original Complaint. Id. at 111-112.

In negotiating the 50-50 sharing agreement, Cross also refused to aggressively challenge P&C, as the clients demanded, on the question of whether P&C had used any of Thorpe's confidential information in the representation of its subsequent clients. After reviewing Thorpe's confidential, privileged information in February of 2002 and declining to take the case, P&C proceeded to represent other clients, who had directly adverse interests, in the same matter. Ignoring their clients' demands, C&B failed to research P&C's ethical obligations to Thorpe, refused to investigate and challenge P&C over this issue, and declined to use the issue in negotiating the 50-50 sharing agreement that would whitewash their negligence. Id. at 114-118.

C&B's handling of the sharing agreement with P&C was tainted by a substantial conflict of interest. C&B allowed its personal interests and its desire to cover up its mistakes to influence its negotiation of the sharing agreement with the P&C relators, to the detriment of its clients. Id. at 96-123. The sharing agreement not only allowed C&B to avoid issues about the deficiencies of the Original Complaint, but also to cede responsibility for the case and ride the coattails of P&C. Id. at 113-123.

It was not until 2009 when Plaintiffs sought to involve another *qui tam* lawyer as co-counsel with C&B that Plaintiffs discovered, among other things, that C&B mishandled the Original Complaint and that C&B put its own interests ahead of their clients' interests when it negotiated the sharing agreement with P&C. Plaintiffs discharged C&B for cause on October 21, 2009. Id. at 166-169.

4720390.10

> Claims Act to the potential case. This process may include an
> investigation of the facts presented and sometimes consultations
> with experts in the field. ... .

P&C Website Excerpt on June 14, 2002 (attached as Exhibit "F"). Leaving the decision to

reject a potential multi-billion dollar lawsuit to an unsupervised, junior associate does not

comport with P&C's representations. Accordingly, Plaintiffs should be permitted to test

P&C's factual assertion by deposition of Dr. Harbinger and by discovery of the documents

requested.

There is also no basis to protect documents related to P&C's evaluation of Thorpe's

prospective claim in 2002 and its handling of Thorpe's privileged, confidential information as

work product. P&C contends that such documents are "P&C's internal work product

communications," Hasegawa Declaration, ¶17, and should be protected because Plaintiffs

have purportedly threatened action against P&C. The work product doctrine provides P&C

no sanctuary. Documents related to P&C's evaluation of Thorpe's prospective claim is

Thorpe's work product. P&C performed the evaluation for Thorpe. As P&C rightly points

out, it did not represent Plaintiffs. Nevertheless, P&C had an ethical obligation to Thorpe as a

prospective client. If discovery in the malpractice case against C&B uncovers misconduct by

P&C, it will be up to Thorpe to decide whether or how to pursue that. However, such

potential fallout is no reason to preclude discovery of non-privileged, discoverable

information relevant to explicit allegations asserted in Plaintiffs' malpractice Complaint.

Furthermore, Plaintiffs' Modified Requests 6-8 are narrowly tailored. The requested

documents are limited to the date that Thorpe submitted his case-evaluation questionnaire and

confidential information to the date of the sharing agreement (April 2002 to February 2004).